

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1111-10

**JAMES MELTON FRAZIER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion.

### O P I N I O N

In this criminal trespass case, James Melton Frazier, the appellant, waived a jury trial and pleaded not guilty. After finding the appellant guilty, the trial court assessed his punishment at 210 days' confinement in the county jail, probated for twelve months. On appeal, the appellant argued that the evidence was legally and factually insufficient to support the finding of guilt. The Fifth Court of Appeals in Dallas affirmed the appellant's

conviction in an unpublished opinion.[1] We granted the appellant's petition for discretionary review in order to determine whether a person who co-owns a piece of property can ever be convicted for criminal trespass upon that property. We will affirm.

**Background**

The Stated charged the appellant by information with criminal trespass, in that he "did unlawfully then and there intentionally and knowingly enter and remain in the habitation of another, namely: CLAUDIA FRAZIER, hereinafter called complainant, without the effective consent of complainant, and the [appellant] had received notice to depart, to-wit: the complainant had by oral communications told the [appellant] to depart, and the [appellant] thereafter failed to depart."[2] The complainant, Claudia Frazier, is the appellant's sister. She testified at trial that she has continuously lived alone in a house at 6225 Silvery Moon Drive since 1992, except when her sister lived there with her from 2001 to 2002. This is the house at which the appellant was alleged to have trespassed.

Trial was before the court, the appellant having waived a jury trial. Claudia testified that around 10 p.m. on March 28, 2009, the appellant entered the house, used the bathroom, ate food from the kitchen, and went back into a bedroom and shut the door. Claudia called

---

[1] *Frazier v. State*, No. 05-10-00090-CR, 2010 WL 2978494 (Tex. App.—Dallas, decided July 30, 2010) (not designated for publication).

[2] *See* TEX. PENAL CODE § 30.05(a)(2) ("A person commits an offense if he enters or remains on or in property . . . of another without effective consent or he enters or remains in a building of another without effective consent" and he "received notice to depart but failed to do so.").

a neighbor to come stay with her in the house when the appellant arrived because she was afraid of him because he once threatened her with a knife. After the neighbor arrived, Claudia asked the appellant to leave, but he refused. Claudia then called the police. Dallas Police Officers Chien and Woodburn responded to a disturbance call at the house and spoke to Claudia. She told them that she owned the home and that her brother, the appellant, refused to leave. She asked the officers to remove him because, according to her, he had a history of becoming violent with her. Claudia explained to the officers that she and her siblings owned the house, but that she was the only one living there. The officers told Claudia that the appellant had just as much a right to live in the house as she did and that she would "have to take it up in civil court."

According to Claudia, after the officers left the house, she ran after them and begged Chien to remove the appellant, but Chien replied that Claudia would have to speak with their supervisor, Sergeant Franklin, who was sitting in a patrol car outside the house. Claudia spoke with Franklin, and he went inside the house and asked the appellant to come outside. The appellant complied, telling the officers that Claudia took the house from everyone and would not let anyone stay there. He told them that he had been staying with friends for the past couple of weeks and used to have his own apartment but had been forced to leave it. The officers asked him for identification, and the appellant gave Franklin an ID listing an address different from the house and admitted to living at the address listed on the ID. Franklin asked the appellant to leave three times, but the appellant told the sergeant that he

"wasn't going anyplace." When the appellant became agitated and continued to refuse to leave, Franklin warned the appellant that he either had to leave the house or go to jail. When the appellant refused to leave, he was arrested and taken to jail.

The appellant also testified at trial. He stated that he knew that Claudia did not want him at the house, but he had no other place to go. He said that his mother bought the home in 1965, he grew up in the house, and he had last lived there in 2006. According to the appellant, a friend dropped him off at the house on March 28, 2009, and he went inside and watched television with Claudia and her neighbor, ate dinner, and then went to a back bedroom to sleep. Claudia came into the bedroom a short time later and told him that he had to leave, and the next thing he knew police officers arrived at the house. After the officers were told that several people owned the house, they notified Claudia that it was a civil matter, and she would need to take this up with a civil attorney. The officers asked Claudia for proof that it was her house, and when she went back inside to "get some papers," the officers left. After Claudia came back into the bedroom and tried to get the appellant to leave, a third officer came into the room and told the appellant to go outside with him. When the appellant went outside, the officer told him that he had to either leave or go to jail. After the appellant told the officer that he was not leaving the house, the officer asked him to turn around and put his hands behind his back, which he did, and then he was taken to the police car. The appellant contended that the officer never asked him for any ID until he was booked into the Lew Sterrett Justice Center.

The appellant also introduced into evidence an affidavit of heirship.[3]  This document purported to show the "Roylean Frazier estate" passing to her six children, which included Claudia Frazier and the appellant, after her death in 1999.  However, in answer to the question, "Did the decedent own any real estate in this State?", the heirship affidavit answered "no."  Claudia's address is listed on the affidavit as 6225 Silvery Moon Drive, the house at issue in this case, and the appellant's address is listed as 8004 West Virginia, Apt. 1407.  After hearing the parties' closing arguments, the trial judge, based on the statement in the affidavit of heirship that the decedent did not own any real estate in Texas, announced that he found that neither Claudia nor the appellant was the title owner of the house.  However, the trial court did note that Claudia had lived there longer and had a greater right to possession of the house than did the appellant.  On that basis, he found the appellant guilty of criminal trespass.

### In the Court of Appeals

On appeal, the appellant contended that the evidence was legally and factually insufficient to support a finding of guilt.  The State was required to prove beyond a reasonable doubt that the appellant intentionally and knowingly entered and remained in the habitation of another without effective consent, and that the appellant received notice to depart but failed to do so.[4]  Because the information alleged, as per the statutory language,

---

[3] TEX. PROB. CODE §§ 52 & 52A.

[4] *Frazier v. State*, *supra*, at *3 (citing TEX. PENAL CODE § 30.05(a)(2)).

that the appellant remained on the property "of another" rather than the property "owned by" another, the court of appeals observed, the State was not required to show the complainant's ownership of the property.[5] The appellant argued that the evidence was insufficient to prove he entered the property "of another," which is an essential element of the offense, because he was a legal heir of his mother's house and owns the property as a co-tenant and thus cannot be liable in trespass. The court of appeals, in an unpublished opinion, stated that, in a criminal trespass case, ownership may be established by proving beyond a reasonable doubt that the complainant had a greater right to possession of the property than the defendant.[6] "Possession," the court of appeals observed, means actual care, custody, control, or management.[7] The court of appeals further observed that as the fact finder, it was the trial judge's role to reconcile conflicts of evidence. Based on the evidence, the court of appeals concluded, the trial court could rationally find that Claudia was in actual "care, custody, control, or management" of the house and had a greater right to possession of the house than did the appellant. Concluding that the evidence supported the trial court's finding that the complainant had a greater right to possession of the house, the court of appeals held that the evidence was sufficient to support the appellant's conviction and affirmed the trial court's

---

[5] *See Thompson v. State*, 12 S.W.3d 915, 920 (Tex. App.—Beaumont 2000, pet. ref'd).

[6] *See* TEX. PENAL CODE § 1.07(a)(35)(A); *Thompson*, 12 S.W.3d at 920.

[7] *See* TEX. PENAL CODE § 1.07(a)(39).

judgment.

## Analysis

We initially granted this petition for discretionary review to decide the issue, as framed by the appellant, of whether a person who co-owns a piece of property as a tenant in common may be convicted of trespassing upon that property—an issue that has never been settled by this Court.[8] However, upon further review, we find that the issue upon which we granted review is not presented, given the particular procedural posture of this case, as we shall explain. Because the issue is not presented, the court of appeals did not err in its opinion by failing to address it.

The appellant argues that he, along with his siblings, including Claudia Frazier, own the house as tenants in common and therefore have equal possessory rights to the house. He predicates this assertion of co-tenancy, *inter alia*, upon the affidavit of heirship which lists himself, Claudia Frazier, and their other siblings as heirs to the estate of Roylean Frazier, their mother, which included the house at which the appellant was found to have trespassed. He contends that since neither Claudia Frazier nor any other co-owner could be "another" within the meaning of the criminal trespass statute because all owned the property as tenants in common with an equal right of possession, the evidence was insufficient to support the trial court's finding of guilt. The appellant argues that the court of appeals, in rendering its

[8] In deciding whether to grant discretionary review, this Court considers "whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals." TEX. R. APP. P. 66.3(b).

decision, failed to address the issue he raised on appeal of whether one co-tenant may be excluded by another so as to justify a conviction for criminal trespass.

However, the question of co-tenancy is not an issue in this case, and it was not necessary for the court of appeals to address this question in order to affirm the appellant's conviction. The trial court heard conflicting evidence on the issue of whether the appellant and Claudia Frazier owned the house as tenants in common. The appellant testified that the house had belonged to his mother, and when she died, he inherited the house along with his siblings.[9] But the affidavit of heirship contradicts the appellant's testimony because it shows

---

[9] During the appellant's direct examination, his counsel handed him the affidavit of heirship and asked him:

Q. Mr. Frazier, do you recognize this document?

A. Yes, sir, I do.

Q. How do you recognize this, sir?

A. I recognize this as an ownership affidavit.

Q. Okay. And what is it regarding ownership to what?

A. To Roylean Frazier's estate.

Q. Okay. And where is that?

A. 6225 Silvery Moon Drive.

Q. Okay. And was that where you – is that the family house you're talking about?

A. Yes, sir, it is.

Q. Is that where you live?

that the appellant's mother did not own any real estate in Texas at the time of her death.  The trial judge weighed all of the evidence at trial and, as fact finder in the trial before the court, it was within his prerogative to find that neither Claudia nor the appellant owned the house based on the assertion in the affidavit of heirship that Roylean Frazier did not own any real estate at her death.  Because the trial court found that neither the appellant nor Claudia Frazier had an ownership interest in the house, and the record supports this finding, the court of appeals did not have to address the appellant's issue of whether a co-tenant may be convicted of trespass upon property to which he claims an equal right of possession.  We can

---

A. Yes, sir.

Q. Is that where you grew up?

A. Yes, sir.

Q. Okay.  And you said this is – this house belonged to your mother; is that correct?

A. Correct.

Q. Okay.  And when your mom passed away she gave you this property or gave the siblings the property?

A. Yes, sir, correct.

Q. And that's how you recognize this affidavit of ownership?

A. Yes, sir.

* * *

Q. It's your contention that you had a right to be there according to this affidavit of ownership?

A. Correct.

assume the court of appeals did not address the appellant's co-tenancy argument because it rightly deferred to the trial court's resolution of the fact issue whether either the appellant or Claudia Frazier owned the house.

Because co-tenancy is not an issue in this case, the court of appeals was correct to conclude that whether the appellant is guilty of criminal trespass boils down to who had a greater right to possession of the house. Since the appellant does not challenge this controlling aspect of the court of appeals's opinion discussing who had the greater possessory interest in the house, we have no occasion to address it on discretionary review. Without further ado, we affirm the judgment of the court of appeals.

DELIVERED:     April 20, 2011
DO NOT PUBLISH